UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| REMINGTYN WILLIAMS, ET AL.<br>　　　　　Plaintiffs | *<br>* | NUMBER 21-CV-00852 |
| | * | JUDGE GREG G. GUIDRY |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE MICHAEL NORTH |
| SHAUN FERGUSON, ET AL.<br>　　　　　Defendants | *<br>* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

Defendant, Lamar A. Davis, named only in his official capacity as the Superintendent of the Louisiana State Police ("LSP"), respectfully submits this reply memorandum in support of his motion to dismiss to address certain arguments raised in the opposition[1] filed by Plaintiffs, Remingtyn A. Williams, Lauren E. Chustz, and Bilal Ali-Bey.

**1. Plaintiffs improperly assert facts in opposition not alleged in their Complaint.**

In their Statement of Facts, Plaintiffs allege for the first time—it is not alleged in their Complaint or in any of the news articles referenced in their Complaint—that LSP employees, "upon information and belief," responded to protestors by "[shooting] tear gas and unauthorized projectiles at Plaintiffs[.]"[2] The Complaint and cited articles refer only to New Orleans Police Department officers, not LSP troopers, deploying tear gas, foam bullets, sponge grenades, and "Stinger" rounds into the crowd. There is no allegation in the Complaint or any known media reports that LSP troopers used any of those types of force. The only allegation of wrongdoing specifically by LSP troopers contained in the Complaint is that unnamed "LSP

---

[1] R.Doc. 27.
[2] *Id.*, p. 1.

{01226813 - v1}

Bystander Officers" witnessed excessive force used by New Orleans Police Department ("NOPD") officers "but failed to intervene to protect the peaceful protesters."[3] The Court should disregard allegations cited for the first time in an opposition pleading under nebulous allegations of "information and belief."[4]

**2. Davis's motion to dismiss, to the extent it seeks dismissal of claims based on Eleventh Amendment immunity, must be considered pursuant to F.R.C.P. 12(b)(1), not F.R.C.P. 12(b)(6).**

Whether a State or State official may be sued in federal court is a jurisdictional issue which must be ruled upon by the Court pursuant to Rule 12(b)(1).[5] *See, e.g., Sissom v Univ. of Tex. High Sch.*, 927 F.3d 343 (5th Cir. 2019) (considering an assertion of Eleventh Amendment immunity and dismissing the matter without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1)). The invocation of this constitutional immunity by a State or State official is not just another affirmative defense. The Eleventh Amendment "textually divests federal courts of jurisdiction over states" and "it is indispensable to assessing this court's jurisdiction." *Id.* at 347. While Plaintiffs posit that the fact that NOPD Superintendent Shaun Ferguson has answered their Complaint somehow renders their claim against Davis "meritorious," Ferguson's appearance is completely irrelevant to whether the State/Davis is immune. "[T]he Eleventh Amendment does not extend its immunity to units of local government" such as the City of New Orleans. *Id.* (quoting *Board of Trustees v. Garrett*, 531 U.S. 356, 369 (2001)). Plaintiffs have the burden to prove that this Court has subject matter jurisdiction over any or all claims;

---

[3] R.Doc. 1., ¶ 65.
[4] As noted in a recent Third Circuit opinion dismissing election litigation filed by the Trump Presidential campaign, "'[u]pon information and belief' is a lawyerly way of saying that [a plaintiff] does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc. v. Sec'y Pennsylvania,* 2020 U.S. App. LEXIS 37346, at *17. (3rd Cir. 2020).
[5] In his motion, Davis requests that the State law claims be dismissed "for lack of subject matter jurisdiction under F.R.C.P. 12(b)(1)." R.Doc. 20-1, p. 4.

the Court is not required to simply accept that subject matter jurisdiction exists because Plaintiffs assert it does, and it is not required to view their assertion of jurisdiction in the light most favorable to Plaintiffs.

### 3. All state law claims against Davis in his official capacity must be dismissed for lack of subject matter jurisdiction.

Plaintiffs argue that they have pled viable state law claims against Davis in his official capacity,[6] but they fundamentally misunderstand sovereign immunity. The State of Louisiana would not be immune from Louisiana state law claims asserted by plaintiffs in a Louisiana state court; instead, the State (and by extension Davis in his official capacity) is immune from being sued on purely state law claims **in a federal court** unless the State consents to jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) ("[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued"). [Emphasis contained in opinion.] "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Congress cannot abrogate a State's sovereign immunity from suit under its own laws in a federal forum. Further, "[b]y statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts." *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 281 (5th Cir. 2002) (citing La. R.S. 13:5106(A) which provides: "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court").

---

[6] R.Doc. 27, pp. 20-21.

The State of Louisiana declines to waive its immunity against state law claims in the instant case. Plaintiffs' insistence that they can pursue state law causes of action against the State in this federal forum is clearly wrong. All state law claims against Davis must be dismissed without prejudice pursuant to Rule 12(b)(1).

4. **All claims for money damages against Davis under all Section 1983 claims must be dismissed.**

Likewise, as set forth in Davis's original motion, Congress did not abrogate the State's Eleventh Amendment immunity through the passage of 42 U.S.C. § 1983. While Plaintiffs' Complaint does not explicitly state that they seek no money damages from Davis, Plaintiffs appear to concede in their opposition that they have no claim for money damages under Section 1983 against Davis.[7] However, in a later footnote, Plaintiffs appear to crawfish and claim that they may be awarded "compensatory damages, including nominal damages [and] punitive damages" against Davis in contradiction of their prior contention.[8] Davis submits that he is entitled to an order dismissing all claims for money damages under Section 1983, specifically including both compensatory damages and punitive damages, because as a State official acting in his official capacity he is not a "person" subject to Section 1983.

5. **No *Monell* claim lies against Davis in his capacity as a State official.**

In a passing footnote,[9] Plaintiffs note that "Davis does not contend that Plaintiffs failed to plead a plausible *Monell*[10] claim against his office[.]" The reason for that is simple: the U.S. Supreme Court held in *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)—a suit similarly

---

[7] R.Doc. 20-2., p. 10 ("Since Plaintiffs sue Davis in his official capacity only for prospective relief—rather than money damages—he is a "person" subject to suit under §1983.")
[8] R.Doc. 27., p. 16 n.8.
[9] *Id.*, p. 14 n. 6.
[10] Section 1983 claims may be filed against municipalities and municipal officials per the U.S. Supreme Court's ruling in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

filed against a State Police agency and its director in an official capacity—that *Monell* does not apply to State officials:

> Finally, *Monell* itself is not to the contrary. True, prior to *Monell* the Court had reasoned that if municipalities were not persons then surely States also were not. *Fitzpatrick* v. *Bitzer*, 427 U.S., at 452. And *Monell* overruled *Monroe*, undercutting that logic. **But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not**, *Monell*, 436 U.S., at 690, n. 54, **and we consequently limited our holding in *Monell* "to local government units which are not considered part of the State for Eleventh Amendment purposes**," *ibid*. Conversely, our holding here does not cast any doubt on *Monell* and applies only to States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes. See, *e. g., Mt. Healthy Bd. of Ed.* v. *Doyle*, 429 U.S. 274, 280 (1977).

*Will*, 491 U.S. at 70. [Emphasis added.] Characterizing a Section 1983 claim as a *Monell* claim makes no difference. Plaintiffs fail to grasp a key distinction between, on the one hand, their claims against the City of New Orleans, a local municipal government entity which is not protected by Eleventh Amendment immunity per the Supreme Court's ruling in *Monell*, and on the other, their claims against the State of Louisiana, which is protected by Eleventh Amendment immunity per the Supreme Court's later ruling in *Will.*

**6. Plaintiffs lack standing for any of their claims for prospective relief against Davis.**

Davis briefed this argument extensively in his original memorandum and re-asserts that these claims should be dismissed for the reasons previously provided to the Court. To the extent that Plaintiffs' opposition relies on their new, previously unpled allegations that LSP troopers "fir[ed] life-threatening munitions at them and deploy[ed] tear gas and chemical irritants that imperiled the reproductive health of female protestors," Davis submits that the Court must disregard these allegations as made outside of the Complaint.

Plaintiffs rely heavily on the Fifth Circuit's ruling in *Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990), to argue that they have standing to request injunctive relief. In *Hernandez*, the plaintiff—a natural born American citizen—requested and was awarded injunctive relief against the U.S. Immigration and Naturalization Services after he presented a Puerto Rican birth certificate and a union card with his social security number at the U.S./Mexico border but was denied re-entry for 46 days. Hernandez requested injunctive relief, which was eventually granted, "requiring that the INS follow certain minimal procedures when an applicant for entry into the United States presents documentary evidence which, if accepted as evidence, would conclusively establish the applicant's United States citizenship." *Id.* at 233. The INS then appealed the grant of the injunction.

The *Hernandez* court affirmed the injunction and, as Plaintiffs note, distinguished *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)—a case cited by Davis in his motion—on the basis that Hernandez, unlike the plaintiff arrestee in *Lyons*, "was engaged in an activity protected by the Constitution." In *Hernandez*, the right at issue was the right of U.S. citizens to travel to and from a foreign country without deprivation of their Fifth Amendment rights. *Id.* at 234. The *Hernandez* court distinguished this activity from "misconduct" or "an individual's disobedience of official instructions." *Id.*

Plaintiffs contend that their occupation of the Crescent City Connection was not "misconduct" and that they were merely exercising their constitutional right to peacefully assemble when they blocked the most heavily traveled bridge in Louisiana without permission. But while there is an undeniable and fundamental First Amendment right for citizens to assemble and protest in a public forum, reasonable time, manner, and place restrictions

imposed by government entities on the right to peaceful assembly do not violate the First Amendment. *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984). There is no clear protected First Amendment right to assemble on a public highway. *See, e.g., Doe v. McKesson*, 945 F.3d 818, 832 (5th Cir. 2019), *vacated on other grounds by McKesson v. Doe,* 141 S.Ct. 48, 208 L.Ed. 158 (U.S. 2020) (wherein the Fifth Circuit held that a protest organizer "ordered the demonstrators to violate a reasonable time, place, and manner restriction by blocking the public highway").

Plaintiffs were not met with law enforcement resistance from NOPD or other law enforcement simply for assembling and protesting the murder of George Floyd at the hand of Minneapolis police officers; other protests related to the same events occurred in New Orleans and other parts of Louisiana without the use of tear gas or non-lethal munitions by police officers or any need for LSP to respond to the scene. Instead, the confrontation Plaintiffs described with NOPD officers occurred largely because of their decision to occupy and block the Crescent City Connection. This would not excuse the actions of NOPD officers, if they are ultimately determined by a jury to have used excessive force or to have violated any other constitutional rights and it is not intended to minimize the importance of the message that Plaintiffs and others were attempting to communicate. But blocking traffic across the Crescent City Connection/U.S. Highway 90 was quite literally misconduct.[11] Even if it were not speculative and conjectural for Plaintiffs to assert that they intend to protest in the future and believe they will be confronted by law enforcement—which Davis denies—It is speculative and

---

[11] La. R.S. 14:97 defines the crime of "simple obstruction of a highway of commerce" as "the intentional or criminally negligent placing of anything or performance of any act on any … highway … which will render movement thereon more difficult."

{01226813 - v1} 7

conjectural that the same situation will happen, where Plaintiffs engage in misconduct by blocking off a highway, are met with resistance from the New Orleans Police Department, and LSP troopers respond to the scene (because their statewide mission includes the patrol and management of all state and federal highways in Louisiana) but allegedly fail to intervene to prevent NOPD from using excessive force. Plaintiffs' claims are not analogous to the claim in *Hernandez* that the plaintiff would travel to Mexico again in the future.

Plaintiffs' claims for injunctive relief under the *Ex parte Young* exception to the State's Eleventh Amendment sovereign immunity should be denied based on Plaintiffs' lack of standing.

**7.    Plaintiffs' Title VI claims against Davis should be dismissed.**

As set forth in Davis's motion, there is no case law within the Fifth Circuit in which a court has held that a Title VI claim can be stated against an individual defendant acting in his/her official capacity. All such claims have been dismissed. Plaintiffs acknowledge this in their opposition.[12] But Plaintiffs ask the Court to read those cases within the Fifth Circuit to require dismissal of the individual defendant only where the State is also named as a defendant, making the individual claim redundant.

Plaintiffs could have named, or seek leave to name, the State as a defendant to their Title VI claim because Congress explicitly abrogated the State's Eleventh Amendment immunity against Title VI claims through the passage of 42 U.S.C. Sec. 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of … title VI of the Civil Rights Act of 1964"). It is unclear why they

---

[12] R.Doc. 27, pp. 18-19.

chose not to do so, given that it would moot their request for this Court to create new law within this circuit. But if Plaintiffs insist on pursuing their Title VI claim solely against Davis rather than against the entity for which Davis serves as an official, Davis submits that the Title VI claims against him should be dismissed under the existing case law within the Fifth Circuit.

## CONCLUSION

For the reasons presented in his motion to dismiss, as supplemented further by this reply, Davis respectfully requests that:

1. All state law claims asserted against him be dismissed for lack of subject matter jurisdiction;

2. All Section 1983 claims seeking money damages from him be dismissed for lack of subject matter jurisdiction;

3. All claims for injunctive relief against him be dismissed for lack of standing; and

4. All Title VI claims asserted against him rather than the State of Louisiana/LSP as an entity defendant be dismissed for failure to state a claim.

Respectfully Submitted,

**JEFF LANDRY**
**Attorney General**
**State of Louisiana**


By: _/s Gregory C. Fahrenholt_
**DENNIS C. PHAYER (La. Bar 10408)**
**GREGORY C. FAHRENHOLT (La. Bar 28572)**
**BURGLASS AND TANKERSLEY, L.L.C.**
5213 Airline Drive
Metairie, Louisiana 70001-5602
Direct Dial Phone: (504) 836-0408
Telefax: (504) 287-0448
Special Assistant Attorneys General
**Attorneys for Defendant, Lamar A. Davis, in his official capacity as Superintendent of the Louisiana State Police**