## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**REMINGTYN WILLIAMS, ET AL.**      **CIVIL ACTION**

**VERSUS**             **NO: 21-852**

**SHAUN FERGUSON, ET AL.**      **SECTION: T(5)**

### ORDER

Before the Court is Defendant Lamar Davis's *Motion to Dismiss*.[1] The Plaintiffs, Remingtyn Williams, Lauren Chustz, and Bilal Ali-Bey, filed a response.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

On the night of June 3, 2020, Remingtyn Williams, Lauren Chustz, and Bilal Ali-Bey, along with several hundred other protestors, gathered on the Crescent City Connection to demonstrate against the "death of George Floyd."[3] Around 9:30 p.m., the protestors marched up the westbound lanes of Highway 90 toward the bridge.[4] On the roadway, New Orleans Police Department ("NOPD") officers were waiting at a police barricade.[5] When the protestors reached the barricade, they asked the officers to "put down their shields [and] batons" in "solidarity" with

---

[1] R. Doc. 20.
[2] R. Doc. 27.
[3] R. Doc. 1 at 3, 17-18, 21; R. Doc. 27 at 3-4. The Plaintiffs, along with other protestors, had demonstrated in New Orleans for the "five days" prior. R. Doc. 1 at 17.
[4] R. Doc. 1 at 3, 17-18, 21; R. Doc. 27 at 3-4.
[5] *Id.* at 17-18. The Plaintiffs allege Louisiana State Police ("LSP") and Jefferson Parish Sheriff's Office ("JPSO") officers were on-scene or nearby, too. *Id.* at 18-19.

the demonstration.[6] After a lengthy standoff, the officers declined and a "group of agitated demonstrators passed through an opening in the police line."[7] At that time, 10:25 p.m., the officers started firing tear gas and rubber bullets at the protestors.[8] The protestors largely dispersed and quickly withdrew from the bridge.[9]

Now, the Plaintiffs have brought suit against NOPD, LSP, and JPSO. Generally, the Plaintiffs contend the "Defendants had no legitimate basis to disperse the peaceful gathering on the night of June 3, 2020 with such extreme use of force" and without warning.[10] Specifically, the Plaintiffs raise nearly a dozen claims against the police officers and their supervisors: (1) aggravated assault and battery; (2) state law freedom of speech violations; (3) Equal Protection clause violations; (4) Substantive Due Process violations; (5) negligence; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) *Monell* and Supervisory liability for First Amendment freedom of speech violations; (9) *Monell* and Supervisory liability for Fourth Amendment excessive force violations; (10) vicarious liability for aggravated assault and battery; and (11) Title VI violations.[11] The Plaintiffs have categorized the Defendants and their claims against them accordingly: the first claim is raised against the "Defendant Officers," claims

---

[6] *Id.* at 18-19.
[7] *Id.* at 20.
[8] *Id.* at 20-21. The protestors allege the officers did so without warning.
[9] *Id.* at 21-22.
[10] R. Doc. 1 at 7. The Plaintiffs contend their protest was peaceful, noting "[v]iolent and illegal conduct, e.g., rioting, is not constitutionally protected and is not something Plaintiffs and their counsel defend." *Id.*
[11] The Plaintiffs also request a class be formed.

(2)-(7) are brought against "All Defendants," and the remaining claims target the "Defendant Supervisors" exclusively.

### I.        The Motion to Dismiss

Colonel Lamar Davis is the Superintendent of the Louisiana State Police and is categorized by the Plaintiffs as a "Defendant Supervisor." Therefore, the Plaintiffs raise ten claims, and four specifically, against Col. Davis including various forms of supervisory liability related to allegations that "officers of LSP's Troop N …witnessed the excessive force being executed by [NOPD] officers" against protestors but "failed to intervene" due to LSP policies that promote, or are at least are indifferent, to constitutional violations and LSP's failure to supervise its officers.[12]

In the present motion, Col. Davis asks this Court to "dismiss all claims against him" for five reasons.[13] First, Col. Davis argues the Plaintiffs' Title VI claim must fail because "only public and private entities can be held liable" under Title VI, not an "individual."[14] Second, Davis contends any *Monell* claim against him must fail because *"Monell* does not apply to State officials," only municipalities and city officials.[15] Third, Col. Davis, as Superintendent of LSP, asserts Eleventh Amendment immunity to suit. Col. Davis contends that, "in his official capacity as a state official, [he] is not a 'person' amenable to suit under Section 1983."[16] Additionally, Col. Davis argues *Ex parte Young* does not apply to the present case because the Plaintiffs "request no

---

[12] *Id.* at 17, 61-66.
[13] R. Doc. 20-1.
[14] *Id*. at 11.
[15] This argument is raised in Col. Davis's reply. R. Doc. 30 at 4-5.
[16] R. Doc. 20-1 at 5.

viable prospective relief" as required by the exception.[17]  Col. Davis classifies each of the

Plaintiffs' requested remedies as either injunctive or declaratory in nature, but argues neither is

appropriate.  Col. Davis contends any declaration that the Plaintiffs' rights were violated is

"backwards-looking" and "tantamount to an award of damages for [a] past violation of law" as

barred by the Fifth Circuit.[18]  Further, as seen below, Col. Davis argues the Plaintiffs lack standing

to seek an injunction.

Fourth, Col. Davis contends the Plaintiffs lack standing because they "assert[] no 'actual

or imminent' or 'certainly pending' future injury which could be redressed [by] an injunction."[19]

In support of his argument, Col. Davis relies on *City of Los Angeles v. Lyons*.[20]  There, the plaintiff

was injured by an allegedly unlawful police maneuver during a traffic stop.  Ultimately, the

Supreme Court found the plaintiff lacked standing because he failed to show a "real and immediate

threat that [he] would again be stopped…by an officer who would illegally choke him into

unconsciousness" once more.[21]  To establish standing, the Supreme Court reasoned, the plaintiff

would have had to "make the incredible assertion" that he "would again have an encounter with

the police and that either he would illegally resist arrest or detention or the officers would disobey

their instructions and again render him unconscious without any provocation."[22]  Here, as in *Lyons*,

---

[17] *Id.*
[18] *Id.* at 8-9.
[19] *Id.* at 8.
[20] 461 U.S. 95 (1983). *See* R. Doc. 30 at 6-7.
[21] *See Id.*
[22] *Id.* at 105-106 (emphasis in original). Additionally, Col. Davis argues the Plaintiffs' reliance on *Hernandez v. Cremer* to argue standing is misplaced.  913 F.2d 230 (5th Cir. 1990). *Hernandez* dealt with an American citizen who

Col. Davis argues it is "speculative and conjectural" for the Plaintiffs to assert "[they will] engage in misconduct by blocking off a highway, are met with resistance from the New Orleans Police Department, and LSP troopers respond to the scene but allegedly fail to intervene to prevent NOPD from using excessive force."[23] Consequently, Col. Davis argues the Plaintiffs' stated injuries, namely the existence of LSP policies that could cause harm at a future protest, are insufficient to meet the standing requirements.

Finally, and relatedly, Col. Davis argues this Court lacks subject matter jurisdiction over the state law claims brought against him.[24] Col. Davis contends that, under Supreme Court precedent, any exception to Eleventh Amendment immunity still does not allow state law claims to be brought in federal court.[25]

## II.    The Plaintiffs' Response

The Plaintiffs filed a response addressing Col. Davis's arguments.[26] First, the Plaintiffs contend that, under Title VI precedent, "individual defendants may be held personally liable" on official capacity claims because it is an "alternative" means of naming the State as a party.[27] The

---

was being hassled upon reentry into the United States due to his Puerto Rican birth. The plaintiff requested an injunction to halt harassment for engaging in an "activity protected by the Constitution," namely asserting one's right to travel. There was a threat of future harm because the plaintiff expressly planned to travel outside of the country again in the future. Col. Davis argues the threat of future harm here, unlike *Hernandez*, is speculative. Further, Col. Davis argues the *Hernandez* court distinguished the plaintiff's actions from "misconduct" or "disobedience of official instructions." Col. Davis contends that, because Plaintiffs blocked a highway in violation of Louisiana laws, they were engaged in "misconduct," not a protected activity.

[23] R. Doc. 30 at 7-8.

[24] R. Doc. 20-1 at 4.

[25] *Id.*; R. Doc. 30 at 3.

[26] R. Doc. 27.

[27] *Id.* at 18. The Plaintiffs admit, however, that in the Fifth Circuit the "question appears unsettled whether a plaintiff may bring a Title VI claim against a government official in his official capacity." *Id.*

Plaintiffs argue that, "[i]n suing Davis in his official capacity, Plaintiffs and Class Members assert their Title VI claim against LSP—not against Davis personally."[28] Second, the Plaintiffs, in response to Col. Davis's assertion of Eleventh Amendment immunity, raise the *Ex parte Young* exception because they are "su[ing] Davis in his official capacity," the violation of their constitutional rights by LSP's polices is ongoing and can be cured by action of this Court.[29] Accordingly, the Plaintiffs argue their requests for injunctive and declaratory relief are prospective, not "backwards-looking," because they would change "the pattern and practice of law enforcement officers in Louisiana."[30]

Third, as for standing, the Plaintiffs contend that, under *Hernandez v. Cremer*, they have put forth a concrete and redressable injury.[31] Generally, to satisfy standing "when seeking prospective relief," a plaintiff must allege a "threat of *future* injury."[32] In *Hernandez*, the "theory of future injury was premised on [the plaintiff's] stated desire to again engage in constitutionally protected conduct," namely exercising the right to travel between Puerto Rico and the continental United States.[33] Here, the Plaintiffs assert their intent to engage in a "constitutionally protected activity," specifically peaceful assembly, but cannot do so out of fear of existing LSP policies.[34]

---

[28] *Id.*
[29] *Id.* at 15-16.
[30] *Id.*
[31] 913 F. 2d 230 (5th Cir. 1990).
[32] *Id.* at 10 (emphasis added).
[33] *Id.* at 12.
[34] *Id.* "Plaintiffs have expressly alleged they wish to participate in future peaceful protests objecting to police misconduct—an exercise of their First Amendment rights to free speech, peaceable assembly, and petitioning state officials for redress of grievances—but they are fearful of doing so because of the threatened harm of LSP's ongoing unconstitutional policies, practices, and customs." *Id.*

The Plaintiffs argue Col. Davis and LSP promote policies and police responses that have had a "chilling effect on the exercise of their First Amendment rights," and an injunction would allow Plaintiffs to protest without fear of retaliation.[35]

Finally, the Plaintiffs assert their state law claims should weather Eleventh Amendment immunity as they are inextricably tied to the federal claims. Additionally, the Plaintiffs argue dismissal of the state law claims would be "premature."[36]

## LAW & ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[37] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38] Federal Rule of Civil Procedure 8 demands "simple, concise, and direct" allegations which "give the defendant fair notice of what the claim is and the grounds upon which it rests."[39] In reviewing a motion to dismiss, a court "must take the factual allegations … as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[40] Accordingly, such motions are viewed with disfavor and rarely granted because "a

---

[35] *Id*. at 12-13.
[36] *See id.*
[37] Fed. R. Civ. P. 12(b)(6).
[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[39] Fed. R. Civ. P. 8(d)(1); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).
[40] *Jefferson v. Lead Indus. Ass'n, Inc*., 930 F. Supp. 241, 244 (E.D. La. 1996); *Lovick v. Ritemoney Ltd*., 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc*., 302 F.3d 552, 558 (5th Cir. 2002)). However, the court is not obligated to accept, as true, legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[41]

Federal Rule of Civil Procedure 12(b)(1) is the initial vehicle for parties to raise a "lack of subject-matter jurisdiction" defense.[42] "The standard of review applicable to…Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)," but the court may review a broader range of materials in considering subject-matter jurisdiction.[43] "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[44]

## I.     The § 1983 Claims

Under 42 U.S.C. § 1983, any "person" who subjects a "citizen of the United States" to the "deprivation of any rights…secured by the Constitution and laws[] shall be liable to the party injured in an action at law." However, the Eleventh Amendment to the United States Constitution immunizes any State from "suits brought in federal courts by her own citizens as well as by citizens of another state."[45]  "There may be a question, however, whether a particular suit in fact is a suit

---

[41] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).
[42] Fed. R. Civ. P. 12(b)(1).
[43] *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 676 (E.D. La. Aug. 2, 2012) (citing *Williams v. Wynne*, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008).
[44] *Clark v. Tarrant Cty., Texas*, 798 F.2d 736, 741 (5th Cir. 1986).
[45] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984) (quoting *Employees of Dept. of Public Health and Welfare v. Dept of Public Health, Missouri*, 411 U.S. 279, 280 (1973). This does not apply when the State or Congress has expressly waived the Eleventh Amendment's protections.

against a State" when the named defendants are state officials.[46] When "the state is the real, substantial party in interest" or the case is "nominally against an officer" of the State, the suit is barred.[47]

However, a "suit challenging the constitutionality of a state official's actions is not one against the State."[48] This exception, known as *Ex parte Young*, holds that when a state official acts in violation of the United States Constitution, "any immunity from responsibility to the supreme authority of the United States" is lost.[49] To fall within the *Ex parte Young* exception, a petitioner must sue "state officers who are acting in their official capacities" and seek redress of an ongoing violation of federal law.[50] Also, the "relief sought must be declaratory or injunctive in nature and prospective in effect."[51] Monetary relief, as well as "backwards-looking, past-tense declaratory judgment[s]" that are "tantamount to an award of damages for a past violation of law," is prohibited.[52] Ultimately, a court should look to the "substance rather than to the form of the relief sought" to determine the nature of the petitioner's request and whether *Ex parte Young* applies.[53]

A plaintiff must always have standing to bring suit in federal court. Standing requires an injury in fact, namely a "concrete and particularized" harm, that can be redressed by action of a

---

[46] *Id.* at 100.
[47] *Id.* at 100-101.
[48] *Id.* at 101-102.
[49] *Id.* at 102 (quoting *Ex parte Young*, 209 U.S. 123, 160 (1974).
[50] *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020).
[51] *Saltz v. Tennessee Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992).
[52] *Abbott*, 955 F. 3d at 425.
[53] *Id.*

9

federal court.[54] By their very nature, requests for injunctive or declaratory relief, the two permissible remedies under § 1983 and *Ex parte Young*, can only redress a "continuing injury or threatened future injury."[55] Ultimately, a future injury "must be certainly impending," not based on "allegations of possible" injury, a "speculative chain of possibilities," or the plaintiff's own "subjective apprehensions."[56]

After reviewing the parties' filings and the applicable law, the Court finds the Plaintiffs have, under 12(b)(6), sufficiently pled factual allegations that (1) grant them standing and (2) support their § 1983 claims. First, for standing, the Plaintiffs must show a "continuing injury or [a] threatened future injury" that may be remedied by prospective relief. Here, the Plaintiffs have alleged an intent to protest in the future.[57] The Plaintiffs' contentions, when viewed in their favor as required by law, allege that LSP officers were on-scene the night of June 3rd and failed to intervene in NOPD's allegedly excessive show of force.[58] Additionally, the Plaintiffs allege Col. Davis and LSP failed to supervise their officers and developed policies that encouraged the use of excessive force, or at least discouraged intervention.[59] Specifically, the "Complaint includes a

---

[54] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[55] *Crawford*, 1 F.4th at 376 (citing *Lyons*, 461 U.S. at 102).

[56] *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2012)); *Lyons*, 461 U.S. at 107, n. 8. Notably, past instances of injury can be evidence of a "real and immediate threat of repeated injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

[57] "Plaintiffs stated they would protest again…but for LSP's demonstrated pattern and practice of engaging in or allowing unconstitutionally excessive and unprovoked force" against minority protestors." R. Doc. 1 at 14. The Plaintiffs also noted the "chilling" effect LSP's policies and lack of supervision has had on their right to protest.

[58] "Upon information and belief, LSP Bystander Officers were also in and/or near the police barricade on the CCC on the night of June 3. LSP's 'Troop N units responded to [the CCC] providing assistance to the NOPD units until the protest peacefully disbursed from the location.'" (R. Doc. 1 at 19).

[59] *Id.* at 61-66.

detailed discussion of numerous instances in which officers from… LSP…disproportionally responded to protests" similar in nature to the Plaintiffs' demonstrations.[60] Finally, the Plaintiffs allege Col. Davis, as superintendent of LSP, "has not curtailed these unconstitutional practices" and policies, "making it reasonably certain they will occur again if this Court does not enjoin them."[61] In short, the Plaintiffs allege their constitutional rights have been violated, such violations are ongoing or may occur again at a later protest, and this Court can remedy those risks with prospective relief, namely injunctions curtailing LSP's policies.[62] Therefore, at this time, the Plaintiffs have standing to bring this suit.

Second, as for § 1983 and *Ex parte Young*, the Plaintiffs satisfy the exception's three requirements under 12(b)(6). The Plaintiffs sued Col. Davis in his official capacity, "allege[] ongoing violations of federal law by LSP," and seek prospective relief.[63] Specifically, the Plaintiffs state "they would participate in future peaceable protestors" but for LSP policies that prevent them from doing so and violate their First, Fourth, and Fourteenth Amendment rights.[64] To remedy these

---

[60] *Id.* at 13.

[61] *Id.* at 13-14. The Plaintiffs contend various instances of bystander liability.

[62] When viewed in a light most favorable to the Plaintiffs, they sufficiently allege "concrete and particularized" risks of "future harm," namely threats to the Plaintiffs' constitutional rights to assemble and to be free from the use of excessive force. "Like the plaintiff in *Hernandez*, Plaintiffs seek to enjoin LSP from again engaging in unconstitutional policies, practices, or customs that will continue to either place a chilling effect on the exercise of their First Amendment rights or actually deter Plaintiffs and Class Members from engaging in constitutionally protected activity. In this case, Plaintiffs have expressly alleged they wish to participate in future peaceful protests objecting to police misconduct—an exercise of their First Amendment rights to free speech, peaceable assembly, and petitioning state officials for redress of grievances—but they are fearful of doing so because of the threatened harm of LSP's ongoing unconstitutional policies, practices, and customs…Plaintiffs also allege that LSP (Davis's office) failed to supervise and train their employees and agents with respect to constitutionally protected activity." R. Doc. 27 at 12-13.

[63] R. Doc. 27 at 15-16.

[64] *Id.* at 15. The Plaintiffs allege several harms, including that LSP has a policy or practice of using excessive force on the basis of race that has had a "disparate impact" upon them, that LSP has failed to train or supervise its officers on crowd control, and that LSP generally exhibits a deliberate indifference to the Plaintiffs' rights. *Id.* at 12-16.

alleged harms, the Plaintiffs ask this Court for "prospective relief to address the ongoing systemic policies and customs" that will lead to further harm, namely a "permanent injunction barring Defendants from engaging in the unconstitutional conduct alleged" and various forms of declaratory relief.[65] Under 12(b)(6), such relief would constitute forward-looking resolutions of the Plaintiffs' injuries. Therefore, when viewed in a light most favorable to the Plaintiffs, the Court finds they have pled sufficient factual allegations to posit § 1983 claims at this time. Accordingly, in regard to the § 1983 claims brought against Col. Davis, the motion is **DENIED**.[66]

## II.    *Monell* **Liability Under § 1983**

While the Eleventh Amendment bars certain suits against the States, "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies."[67] Therefore, under *Monell*, "[l]ocal governing bodies" can be sued for policies "adopted and promulgated by that body's officers."[68] However, *Monell* applies only to municipalities and "local" officers, not agents of the State. Col. Davis is the Superintendent of the Louisiana State Police, one of the State's law enforcement agencies, and is appointed by the Governor. Therefore, he is a state actor, not a local actor. Further, the Plaintiffs have already put forth the proper vehicle for bringing claims against Col. Davis: § 1983 and *Ex parte Young*.

---

[65] *Id.* at 16-17; R. Doc. 1 at 36-41. At this time, the Court finds the Plaintiffs' request for declarations of constitutional injury are not the "backwards-looking" type barred by binding precedent. *Abbott*, 955 F. 3d at 425. Instead, these requests are prospective in nature as they ask this Court to declare the Defendants" conduct violated their rights and institute injunctions to bar such declared violations in the future.
[66] The Court notes that Rule 12(b)(6) motions are not dispositive in regard to a suit's ultimate merits.
[67] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).
[68] *Id.* at 690-691.

Accordingly, in regard to the Plaintiffs' *Monell* claims against Col. Davis, the motion is **GRANTED,** and the claims are **DISMISSED WITH PREJUDICE**.

### III.   The Title VI Claim

Under Title VI of the Civil Rights Act of 1964, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[69] However, although the law uses the term "persons," Title VI "permits suits only against public or private entities receiving funds and not against individuals."[70]

After reviewing the parties' filings and the applicable law, the Court concludes that Col. Davis "is not a proper defendant under Title VI."[71] The Plaintiffs admit "the question appears unsettled whether a plaintiff may bring a Title VI claim against a government official in his official capacity," but ask this Court to settle that matter.[72] There is no case in the Fifth Circuit allowing an individual to be sued in their official capacity, but there are cases dismissing Title VI suits against individuals sued in their individual capacity.[73] Accordingly, this Court will rely on related

---

[69] 42 U.S.C. § 2000.

[70] *Muthukumar v. Kiel*, 478 Fed. Appx. 156, 159 (5th Cir. 2012); *see also Price v. La. Dep't of Educ.,* 329 Fed. Appx. 559, 560 (5th Cir. 2009).

[71] *Mayorga Santamaria ex rel. Doe Child. 1-3 v. Dallas Indep. Sch. Dist.*, 2006 WL 3350194, at *48 (N.D. Tex. Nov. 16, 2006) ("Plaintiffs have pointed the court to no cases, and the court has found none on its own, holding that an individual may be sued under Title VI. Accordingly, based on the above-cited law, the court concludes that Defendant Principal Parker, sued in her individual capacity, is not a proper defendant under Title VI.").

[72] R. Doc. 27 at 18.

[73] *Muthukumar*, 478 Fed. Appx. 156 (holding suit against individual professor under Title VI, which prohibits discrimination under program or activity receiving federal financial assistance, was not permitted); *see also Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002).

Fifth Circuit precedent, and the Title VI claim against Col. Davis is **DISMISSED WITH PREJUDICE**.

    **IV.**    **The State Law Claims**

    The Court finds that, because the Plaintiffs have sufficiently pled one or more federal claims against Col. Davis, it is not necessary at this time to address whether the Plaintiffs' state law claims are properly intertwined with the Plaintiffs' pending federal claims.[74] Accordingly, in regard to the state law claims brought against Col. Davis, the motion is **DENIED**.

---

[74] 28 U.S.C. § 1367.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that, in regard to the § 1983 claims brought against Col. Davis, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that, in regard to the Plaintiffs' *Monell* claims against Col. Davis, the motion is **GRANTED,** and the claims are **DISMISSED WITH PREJUDICE**

**IT IS FURTHER ORDERED** that, in regard to the Title VI claim against Col. Davis, the motion is **GRANTED,** and the claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, in regard to the state law claims brought against Col. Davis, the motion is **DENIED**.

New Orleans, Louisiana, this __30th__ day of March, 2022.


_____
        Hon.Greg Gerard Guidry
        United States District Judge

15