UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REMINGTYN WILLIAMS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-852** |
| **SHAUN FERGUSON, ET AL.** | **SECTION: T(5)** |

## ORDER

Before the Court is Defendant Joseph P. Lopinto's *Motion to Dismiss or, Alternatively*, *for Summary Judgment*.[1] The Plaintiffs, Remingtyn Williams, Lauren Chustz, and Bilal Ali-Bey, filed a response.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

On the night of June 3, 2020, Remingtyn Williams, Lauren Chustz, and Bilal Ali-Bey, along with several hundred other protestors, gathered on the Crescent City Connection to demonstrate against the "death of George Floyd."[3] Around 9:30 p.m., the protestors marched up the westbound lanes of Highway 90 toward the bridge.[4] On the roadway, New Orleans Police Department ("NOPD") officers were waiting at a police barricade.[5] When the protestors reached the barricade, they asked the officers to "put down their shields [and] batons" in "solidarity" with

---

[1] R. Doc. 34.
[2] R. Doc. 44.
[3] R. Doc. 1 at 3, 17-18, 21; R. Doc. 27 at 3-4. The Plaintiffs, along with other protestors, had demonstrated in New Orleans for the "five days" prior. R. Doc. 1 at 17.
[4] R. Doc. 1 at 3, 17-18, 21; R. Doc. 27 at 3-4.
[5] *Id.* at 17-18. The Plaintiffs allege Louisiana State Police ("LSP") and Jefferson Parish Sheriff's Office ("JPSO") officers were on-scene or nearby, too. *Id.* at 18-19.

the demonstration.[6] After a lengthy standoff, the officers declined and a "group of agitated demonstrators passed through an opening in the police line."[7] At that time, 10:25 p.m., the officers started firing tear gas and rubber bullets at the protestors.[8] The protestors largely dispersed and quickly withdrew from the bridge.[9]

Now, the Plaintiffs have brought suit against NOPD, the Louisiana State Police, and the Jefferson Parish Sheriff's Office. Generally, the Plaintiffs contend the "Defendants had no legitimate basis to disperse the peaceful gathering on the night of June 3, 2020 with such extreme use of force" and without warning.[10] Specifically, the Plaintiffs raise nearly a dozen claims against the police officers and their supervisors: (1) aggravated assault and battery; (2) Louisiana's freedom of speech violations; (3) Equal Protection clause violations; (4) Substantive Due Process violations; (5) negligence; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) *Monell* and Supervisory liability for First Amendment freedom of speech violations; (9) *Monell* and Supervisory liability for Fourth Amendment excessive force violations; (10) vicarious liability for aggravated assault and battery; and (11) Title VI violations.[11] The Plaintiffs have categorized the Defendants and their claims against them accordingly: the first

---

[6] *Id.* at 18-19.
[7] *Id.* at 20.
[8] *Id.* at 20-21. The protestors allege the officers did so without warning.
[9] *Id.* at 21-22.
[10] R. Doc. 1 at 7. Plaintiffs contend their protest was peaceful, noting "[v]iolent and illegal conduct, e.g., rioting, is not constitutionally protected and is not something Plaintiffs and their counsel defend." *Id.*
[11] The Plaintiffs also request a class be formed.

claim is raised against the "Defendant Officers," claims (2)-(7) are brought against "All Defendants," and the remaining claims target the "Defendant Supervisors."

Joseph P. Lopinto is the Sheriff of the Jefferson Parish Sheriff's Office ("JPSO") and is categorized by the Plaintiffs as a "Defendant Supervisor." Therefore, the Plaintiffs raise ten claims, and four specifically, against Sheriff Lopinto including various forms of supervisory liability related to allegations that "JPSO Bystander Officers" observed "the excessive force being executed by other law enforcement officers…but failed to intervene to protect" the protestors due to JPSO policies and carelessness.[12]

In the present motion, Sheriff Lopinto asks this Court to dismiss the Plaintiffs' claims due to the alleged absence of JPSO agents on the night in question.[13] Further, Sheriff Lopinto attacks the Plaintiffs' federal *Monell* claims on three grounds. First, Sheriff Lopinto asserts the "Plaintiffs do not identify any generally applicable statement of policy promulgated by the Sheriff" or an "obvious need to train" JPSO officers.[14] Sheriff Lopinto contends that, to be liable under federal law, the Plaintiffs must prove JPSO formally or informally adopted a policy that caused the Plaintiffs' injuries.[15] Second, and relatedly, Sheriff Lopinto argues no JPSO policy could have caused the Plaintiffs' harms due to the alleged absence of JPSO officers at the protest.[16] Finally,

---

[12] R. Doc. 1 at 17, 61-66.
[13] R. Docs. 34 at 1; 34-1.
[14] *Id.* at 16.
[15] *Id.* at 15. In response, the Plaintiffs assert JPSO has a policy of using, or at least not preventing the use of, excessive force against minorities. As evidence, the Plaintiffs assert several past incidents of JPSO officers allegedly using excessive force against minorities.
[16] *Id.* at 15-17.

Sheriff Lopinto argues the Plaintiffs cannot prove JPSO agents committed an "underlying constitutional tort," a fundamental element of *Monell* claims.[17] Sheriff Lopinto also raise similar absence arguments against the Plaintiffs' state law vicarious liability claims.[18]

The Plaintiffs raise two arguments in response. First, the Plaintiffs assert that, under 12(b)(6), they have sufficiently pled that JPSO agents were on-scene June 3rd and stood by as NOPD officers used excessive force against protestors.[19] Factually, the Plaintiffs rely on news reports and an affidavit stating "eyewitnesses" saw JPSO officers and equipment on or near the bridge that night.[20] Second, the Plaintiffs argue the requirements of *Monell* are satisfied. The Plaintiffs assert Sheriff Lopinto "is a policymaker" for JPSO and directly influences the creation and implementation of its policies.[21] As for the policy, the Plaintiffs turn to JPSO's record of allegedly using excessive force against minorities.[22] Further, the Plaintiffs assert Sheriff Lopinto's "de facto policies with respect to the use of force (Whether directly participated in or tacitly allowed as bystanders) caused [the Plaintiffs'] constitutional injury."[23] Finally, as an "underlying

---

[17] *Id.* at 12-19. Sheriff Lopinto argues the Plaintiffs fail to put forth "any allegation that any individual member of the JPSO acted in any manner to deprive Plaintiffs of their Constitutional rights." *Id.*
[18] *Id.* at 19.
[19] *Id.* at 15.
[20] R. Doc. 44-2 at 1; R. Doc. 1 at 18.
[21] *See* R. Doc. 44.
[22] R. Doc. 44 at 5, 15; *see* R. Doc. 1.
[23] R. Doc. 44 at 15. "Specifically, Plaintiffs have alleged that officers involved in dispersing the crowd of demonstrators on June 3, 2020 used excessive force, including dispensing of tear gas into peaceful crowds without warning, assaulting demonstrators with batons and/or shields, and deploying projectiles. Plaintiffs allege that they suffered injuries as a result of this use of force including physical pain, bruising, menstrual irregularities, and emotional distress. Plaintiffs allege that, upon information and belief, JPSO Bystander Officers were present at the police barricade where excessive force was used, failed to intervene to protect protesters, and also acted in concert with other officers in disbursing munitions." *Id.*

constitutional tort," the Plaintiffs assert First, Fourth, and Fifteenth Amendment violations. Also, the Plaintiffs raise the same argument for their vicarious liability claims.

## LAW & ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[24] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] Federal Rule of Civil Procedure 8 demands "simple, concise, and direct" allegations which "give the defendant fair notice of what the claim is and the grounds upon which it rests."[26] In reviewing a motion to dismiss, a court "must take the factual allegations … as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[27] Accordingly, such motions are viewed with disfavor and rarely granted because "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[28]

Federal Rule of Civil Procedure 12(b)(1) is the initial vehicle for parties to raise a "lack of

---

[24] Fed. R. Civ. P. 12(b)(6).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[26] Fed. R. Civ. P. 8(d)(1); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).
[27] *Jefferson v. Lead Indus. Ass'n, Inc*., 930 F. Supp. 241, 244 (E.D. La. 1996); *Lovick v. Ritemoney Ltd*., 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc*., 302 F.3d 552, 558 (5th Cir. 2002)). However, the court is not obligated to accept, as true, legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.
[28] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

subject-matter jurisdiction" defense.[29] "The standard of review applicable to…Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)," but the court may review a broader range of materials in considering subject-matter jurisdiction.[30] "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[31]

### I.     § 1983 & *Monell* Claims

Under 42 U.S.C. § 1983, any "person" who subjects "any citizen of the United States" to the "deprivation of any rights…secured by the Constitution and laws[] shall be liable to the party injured in an action at law." The Eleventh Amendment immunizes the State from "suits brought in federal courts by her own citizens as well as by citizens of another state," regardless of the remedy sought.[32] However, under Supreme Court precedent, "municipalities [can be] considered 'persons,'" and therefore be subject to suit, if the "constitutional deprivation" in question has its origin in "what can fairly be said to be a policy of a municipality."[33]

---

[29] Fed. R. Civ. P. 12(b)(1).
[30] *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 676 (E.D. La. Aug. 2, 2012) (citing *Williams v. Wynne*, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008).
[31] *Clark v. Tarrant Cty., Texas*, 798 F.2d 736, 741 (5th Cir. 1986).
[32] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984) (quoting *Employees of Dept. of Public Health and Welfare v. Dept of Public Health, Missouri*, 411 U.S. 279, 280 (1973). This does not apply when the State or Congress has expressly waived the Eleventh Amendment's protections.
[33] *Lee v. Morial*, 2000 WL 726882, at *2 (E.D. La. June 2, 2000) (citing *Monell v. City of New York Dept. of Social Services*, 436 U.S. 658, 694 (1978)). A city is not liable under § 1983 on the basis of respondeat superior, but only for acts attributable to it "through some official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

"Given that 'official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent,' Plaintiff[s'] claims against the Sheriff in his official capacity are actually claims against the local government entity he serves," the Jefferson Parish Sheriff's Office.[34] Accordingly, the Plaintiffs' claims against Sheriff Lopinto are governed by the requirements of *Monell*.[35]

> Under *Monell*, a plaintiff asserting a § 1983 claim against a municipality must allege (1) the existence of an official policy or custom, (2) a policymaker's actual or constructive knowledge of the policy or custom, and (3) a constitutional violation where the policy or custom is the 'moving force.'[36]

Ultimately, each element has separate considerations in play. First, "[t]he existence of a policy" must be shown "through evidence of an actual policy…officially adopted and promulgated [by people with] policymaking authority."[37] However, a policy may also be established by a "widespread practice" that, "although not authorized by officially adopted" policies, is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[38] Second, "[a]ctual or constructive knowledge of [a] custom must be attributable to" a policymaker.[39] A municipal policymaker is someone who has "the responsibility for making law

---

[34] *Pudas v. St. Tammany Par., Louisiana*, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019).
[35] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).
[36] *Pudas,* 2019 WL 2410939, at *3 (citing *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)) (citation omitted).
[37] *Valle*, 613 F. 3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).
[38] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).
[39] *Id.* at 842.

or setting policy in any given area of a local government's business."[40]

Third, known as the "moving force" requirement, there must be a "direct causal link between" the policy and the constitutional violations in question.[41] "A plaintiff satisfies the 'moving force' requirement by 'show[ing] that the municipal action was taken with the requisite degree of culpability and [demonstrating] a direct causal link between the municipal action and the deprivation of federal rights.'"[42] In short, a suit against a municipal entity under § 1983 must show the "deprivation of a federally protected right" was "caused by action taken pursuant" to a municipality's policy or custom, plus that the policy was adopted with a culpable mindset.[43] The culpability element requires the policy to be facially unconstitutional, or promulgated with a "deliberate indifference" to the "obvious [constitutional] consequences" that would flow from its adoption.[44]

As a preliminary matter, while the discovery process may ultimately reveal facts that contradict the plaintiff's initial allegations, the Court must resolve any ambiguities in favor of the non-moving party in a motion to dismiss. Therefore, under 12(b)(6), the Court finds the Plaintiffs have raised sufficient factual allegations, through news reports and sworn affidavits, to show JPSO officers may have been on-scene on the night of the protest.[45]

---

[40] *Valle, 613 F.3d at 542* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)).
[41] *Piotrowski v. City of Houston*, 237 F. 3d 567, 580 (5th Cir. 2001).
[42] *Pudas,* 2019 WL 2410939, at *3 (citations omitted).
[43] *Valle*, 613 F. 3d at 541.
[44] *Id.* at 543, 548.
[45] R. Doc. 44-2 at 1; R. Doc. 1 at 18.

As for the Plaintiffs' claims, after reviewing the parties' filings and the applicable law, the Court finds that, under 12(b)(6), the Plaintiffs have satisfied the three requirements of *Monell*. First, the Plaintiffs sufficiently allege the existence of a policy, namely an unofficial "widespread practice" by JPSO officers of directly exercising, or indifferently permitting the use of, excessive force. The Plaintiffs cite the night of June 3rd as well as several other JPSO encounters as evidence of an ongoing "policy" of excessive force at JPSO.[46] Second, the Plaintiffs allege Sheriff Lopinto is a JPSO policymaker. Sheriff Lopinto does not contest such an allegation. "Since [JPSO] chose not to pursue this angle of defense," namely disputing Sheriff Lopinto's status, "no more need be said of it."[47]

Finally, under 12(b)(6), the Plaintiffs put forth factual allegations sufficient to meet the underlying tort, "moving force," and culpability requirements for three reasons. One, the Plaintiffs allege that JPSO officers were probably present on the night in question and those officers stood by as the Plaintiffs were assaulted, discriminated against, and deterred from peacefully assembling.[48] The Plaintiffs contend the officers' inaction was the result of an informal JPSO policy that encouraged, or failed to discourage, the use of excessive force against protestors and minorities. Therefore, as an underlying constitutional tort, the Plaintiffs sufficiently allege First, Fourth, and Fourteenth Amendment violations.

---

[46] R. Doc. 1 at 47-49.
[47] *Webster*, 735 F.2d at 842.
[48] *See R. Docs. 1, 44*.

Two, under the 12(b)(6) standard, the Plaintiffs satisfactorily allege that JPSO's "policies with respect to the use of force (Whether directly participated in or tacitly allowed as bystanders) *caused* [the Plaintiffs'] constitutional injur[ies.]"[49] Thus, the Plaintiffs identify a "direct causal link between" the JPSO policy and the violation of their First, Fourth, and Fourteenth Amendment rights. Three, because there is no formal language to decipher for constitutionality, the Plaintiffs allege the adoption of the excessive force policy "demonstrate[s] [JPSO's] deliberate indifference" to the "obvious consequences" of such a policy, namely the violation of the Plaintiffs' constitutional rights on the night of June 3rd.[50] Therefore, when viewed in a light most favorable to the Plaintiffs, the Complaint raises factual allegations that sufficiently support *Monell* claims against Sheriff Lopinto and JPSO. Accordingly, the motion is **DENIED**.

## II. The State Law Claims

The Court finds that, because the Plaintiffs have sufficiently pled one or more federal claims against Sheriff Lopinto, it is not necessary at this time to address whether the Plaintiffs' state law claims are properly intertwined with the pending federal claims.[51] Accordingly, in regard to the state law claims brought against Sheriff Lopinto, the motion is **DENIED**.

---

[49] R. Doc. 44 at 15 (emphasis added).
[50] R. Doc. 44 at 15. For additional support regarding the "obvious consequences" of JPSO's actions, the Plaintiffs turn to "the poor training and supervision of JPSO bystander officers" and the injuries that would stem from such inaction.
[51] 28 U.S.C. § 1367.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, this \_\_\_30th\_\_\_ day of March, 2022.

                                                                         Hon. Greg Gerard Guidry
                                                                         United States District Judge